IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| EFFIE CAMPBELL SIEGLING BOWERS by and through her ATTORNEY-IN-FACT TERRELL W. BOWERS,<br><br>    Plaintiff,<br><br>v.<br><br>BRANCH BANKING AND TRUST COMPANY, Successor in merger to BRANCH BANKING AND TRUST COMPANY OF SC, and STERLING CAPITAL MANAGEMENT, LLC, Successor in merger to BB&T ASSET MANAGEMENT, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 4:15-CV-00011-MTT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Defendant Branch Banking and Trust Company ("BB&T Bank") and Defendant Sterling Capital Management, LLC ("Sterling") have moved to dismiss the Plaintiff's amended complaint.[1]  (Doc. 23).  For the following reasons, the motion is **GRANTED in part** and **DENIED in part**.

## I.      BACKGROUND

The Plaintiff's amended complaint (Doc. 20) and interrogatory responses (Doc. 21) filed with the amended complaint allege the following facts.  In 1998, Plaintiff Effie Bowers created the Effie C.S. Bowers Irrevocable Insurance Trust, and in 2001, BB&T Bank began serving as its trustee.  (Doc. 20 at ¶¶ 21, 22).  At that time, the Plaintiff's

---

[1] Sterling's predecessor company is BB&T Asset Management, LLC, which is the successor in merger of BB&T Asset Management, Inc.  (Doc. 20 at ¶ 7).  BB&T Bank's predecessor company is Branch Banking and Trust Company of South Carolina.  For ease of reference, the Court refers to the Defendants throughout the opinion as BB&T Bank and Sterling.

other assets were held at another financial services firm.  (Doc. 20 at ¶ 24).  In 2006, BB&T Bank sought to manage all of the Plaintiff's financial assets.  (Doc. 20 at ¶ 25). BB&T Bank represented to the Plaintiff that if she "turned over her financial life," it would "craft comprehensive solutions tailored to her individual needs and provide prudent, holistic management of her assets and income sufficient to meet her current and future needs."  (Doc. 20 at ¶ 27).  Moreover, BB&T Bank assured the Plaintiff that, "through its Wealth Management/Trust Department, it would provide the added protection and oversight due from knowledgeable fiduciaries."  (Doc. 20 at ¶ 28).  Relying on BB&T Bank's representations, the Plaintiff engaged BB&T Bank and Sterling "as her fiduciaries and entrusted them with her assets."  (Doc. 20 at ¶ 29).

On August 16, 2006, the Plaintiff entered into a form "BB&T Wealth Management Agreement" ("the Agreement") with BB&T Bank and Sterling.[2]  (Doc. 20 at ¶ 30). Among other things, BB&T Bank, acting as "Wealth Manager" through its Wealth Management Division, promised to "(i) gather information from the [Plaintiff] regarding [her] investment objectives, risk tolerance and investment horizon, tax status, financial situation and needs, (ii) make recommendations to the [Plaintiff] regarding an investment program and investment guidelines for [her assets][,] and (iii) coordinate and supervise the services of [Sterling] and [BB&T Bank]."  (Docs. 20 at ¶ 30; 20-1 at 2). Sterling, acting as "Investment Advisor," promised to consult with the Plaintiff and BB&T Bank to establish investment objectives for investing the Plaintiff's assets, and within those established objectives, the Plaintiff granted Sterling "complete discretion to purchase or sell" her assets.  (Docs. 20 at ¶ 31; 20-1 at 2-3).

---

[2] The parties to the Agreement were BB&T Asset Management, Inc. and Branch Banking and Trust Company of South Carolina.  (Doc. 20-1).

The Plaintiff alleges BB&T Bank knew the Wealth Management Agreement contained deliberate misrepresentations, did not intend to fulfill its promised duties and obligations, and, in fact, knew it could not do so.  (Doc. 20 at ¶ 34).  This is because BB&T Bank "was restricted from fulfilling the duties and obligations which it promised to perform."  (Doc. 20 at ¶ 35).  The Defendants, rather than developing and abiding by a diversified and prudent portfolio to generate income, directed their employees and provided them with financial incentives to sell a product known as the Variable Prepaid Forward Contract ("VPFC") as a part of their Alternative Investment Initiative scheme. (Doc. 20 at ¶¶ 36, 41).  The strategy devised by the Defendants was "intended to induce the transfer of substantially all of [the Plaintiff's] liquid investments, holdings and assets" to BB&T Bank's Wealth Management Division over which the Defendants "promised to exercise investment supervision and management responsibilities."  (Doc. 20 at ¶ 38). "Unbeknownst" to the Plaintiff, the purpose of this move was to "generate substantial fees" for the Defendants.  (Doc. 20 at ¶¶ 36, 38).

To induce the Plaintiff to accept this strategy, the Defendants represented that "the purpose of the VPFC was to raise cash from which to create a diversified portfolio for [the Plaintiff] and to protect her irreplaceable assets from loss."  (Doc. 20 at ¶¶ 36, 46).  The Defendants also represented that they had "special expertise" in VPFCs and so could recommend and sell this product and associated strategy as the "best method" to generate funds to pay off outstanding debt, reduce the risk of her concentrated position in AFLAC stock,[3] create a diversified portfolio, protect her assets, and avoid

_____

[3] The Plaintiff knew the founders of American Family Life Assurance Company of Columbus, the predecessor of the company now known as AFLAC Incorporated ("AFLAC"), and purchased shares in the company early in its development.  (Doc. 20 at ¶ 17).  She also inherited "a large

creating any taxable events during her lifetime.  (Doc. 20 at ¶ 39).  However, the Defendants misled the Plaintiff about their advisers' expertise in VPFCs: the advisers were untrained, had no experience in determining whether VPFCs were prudent and suitable for the Plaintiff, and had never performed any such analysis.  (Docs. 20 at ¶ 40; 21 at 9).  Additionally, the Defendants failed to educate their employees about "the speculative and risky nature of VPFCs, their enormous associated fees and costs, and the need to conduct careful analyses before recommending or selling any such product or strategy as prudent or suitable for their clients."  (Doc. 20 at ¶ 40).  As a result, the Defendants never described the full costs and fees associated with VPFCs, the investment risks involved with VPFCs and associated strategy, the imprudence of such a strategy for a person in the Plaintiff's position, or provided any other options or alternatives.  (Doc. 20 at ¶¶ 42, 46).  According to the Plaintiff, the Defendants also "knew that their recommended strategy was imprudent, unsuitable and risky and placed [the Plaintiff's] life savings in serious jeopardy of destruction."  (Doc. 20 at ¶ 46).

The Plaintiff relied upon the Defendants' representations and entered a VPFC transaction on or about August 22, 2006.  (Docs. 20 at ¶ 44; 21 at 14).  The Defendants' employees involved in this transaction included Ross Walters, Anthony Mahfood, and Shawn Gibson.  (Doc. 21 at 10 n.2).  BB&T Bank first applied the proceeds of the VPFC to "satisfy [the Plaintiff's] outstanding obligations, paying off debt owed to another financial institution and thereby simultaneously securing the transfer of her financial assets to the control of [the Defendants]."  (Doc. 20 at ¶ 45).  The remaining proceeds were entrusted to the Defendants for management.  (Doc. 20 at ¶ 45).  The Defendants

position in AFLAC stock" from her husband.  (Doc. 20 at ¶ 20).  Thus, by the "mid-2000's," the Plaintiff owned "hundreds of thousands of shares in AFLAC stock."  (Doc. 20 at ¶ 24).

and their employees continued to recommend VPFCs to the Plaintiff and continued to misrepresent the "prudency and suitability of VPFCs as an investment strategy."  (Docs. 20 at ¶¶ 51, 52; 21 at 10).  As a result of these subsequent misrepresentations, the Plaintiff entered into four additional VPFC transactions, which took place on or about October 16, 2007, October 16, 2009, August 30, 2012, and June 17, 2014.  (Docs. 20 at ¶ 51; 21 at 9-10, 14).  The Defendants' employees involved in the 2007 transaction were Ross Walters, Anthony Mahfood, and Shawn Gibson; the employees involved in the 2009 transaction were Ross Walters, Anthony Mahfood, Nathan Deal, and Mike Lackey; the employees involved in the 2012 transaction were Ross Walters, Anthony Mahfood, Steve Gow, and Mike Lackey; and the employees involved in the 2014 transaction were Ross Walters, Nathan Deal, and Mike Lackey.  (Doc. 21 at 10 n.2).

In 2012, the Plaintiff, along with other BB&T clients, received a letter (the "Refund Letter") which included the following statement:

> Recently, as a part of a review of client accounts we discovered that a fee was charged to your account that we wish to refund to you.  While we are not required to rebate these fees, we choose to do so as a reflection of our corporate values. … This fee would not have been charged under our current billing practices. … Thank you for the trust and confidence you have placed in BB&T Wealth.

(Docs. 20 at ¶ 54; 20-2 at 2).  The Plaintiff alleges this statement was "incorrect and deliberately designed to be misleading."  (Doc. 20 at ¶ 55).  According to the Plaintiff, "[t]he actual impetus for the fee refund was the criticism of [Sterling's] fee practices by the Securities and Exchange Commission ("SEC")."  (Doc. 20 at ¶ 55).  "The SEC had criticized [Sterling's] practice of charging transaction-based 'broker-esque' fees for selling derivate products including VPFCs even though that entity lacked a broker-dealer license."  (Doc. 20 at ¶ 55).  In fact, "[t]he transaction-based fee revenue was

credited to the bonus matrices of employees of both Sterling and BB&T Bank, which factored into Defendants' determinations into the receipt and amount of those employees' bonuses in the years those transaction-based fees were charged."  (Doc. 21 at 4).  Thus, despite serving as the Plaintiff's fiduciary, the Defendants "misled [the Plaintiff] and other clients regarding the refund to obscure the nature of their business practices."  (Docs. 20 at ¶ 55; 21 at 11).

As a result of the Defendants' advice and recommended strategy, and their failure to provide the promised financial and expenditure planning and controls, the Plaintiff's "assets and income have been decimated."  (Doc. 20 at ¶¶ 50, 57).  One result of this decimation is that the Plaintiff could not continue paying insurance premiums for the Effie C.S. Bowers Irrevocable Insurance Trust.  (Doc. 20 at ¶ 21).  BB&T Bank, still acting as the trustee, "exploited this situation [by] cross-selling its lending services to loan funds on an annual basis as insurance premiums came due."  (Doc. 20 at ¶ 50).  The loaned amount, including fees and interest, exceeds $1 million and continues to grow.  (Doc. 20 at ¶ 50).

The Plaintiff further alleges that a client of the Defendants who received the 2012 letter and entered into the same form Wealth Management Agreement recently obtained a final judgment in excess of $17.1 million against the Defendants in a state court in South Carolina.  (Docs. 20 at ¶¶ 58-60; 21 at 5).  The Plaintiff argues this judgment precludes relitigation of several issues.  (Doc. 20 at ¶ 59).  For example, the prior judgment found that the "Defendants, notwithstanding their position as [plaintiff's] fiduciary, breached their duties … [b]y misrepresenting that BB&T had expertise in VPFCs and the associated strategy [and] [b]y permitting untrained and misinformed

representatives to sell a product and strategy which they were unqualified to sell … ."
(Doc. 20 at ¶ 62).

The Plaintiff brings eleven causes of action against both of the Defendants: (1)
breach of contract; (2) breach of fiduciary duty; (3) breach of contract accompanied by
fraudulent act; (4) state securities act violations; (5) fraudulent misrepresentation; (6)
constructive fraud; (7) fraud in the inducement; (8) negligent misrepresentation; (9) civil
conspiracy; (10) violation of the Georgia RICO Act; and (11) violation of the Georgia
Fair Business Practices Act.  The Defendants have moved to dismiss the complaint,
arguing it is a "shotgun pleading," the fraud-based counts fail to satisfy the pleading
standards of Fed. R. Civ. P. 9(b), and none of the counts satisfy Fed. R. Civ. P. 8(a)(2).

## II.    DISCUSSION

### A.  Standard of Review

To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient
factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true,
and the reasonable inferences therefrom are construed in the light most favorable to the
plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal
quotation marks and citation omitted).  However, "where the well-pleaded facts do not
permit the court to infer more than the mere possibility of misconduct, the complaint has
alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S.
at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "[C]onclusory allegations, unwarranted
deductions of facts or legal conclusions masquerading as facts will not prevent

dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B. Analysis

#### 1. Shotgun Pleading

The Defendants first argue the complaint should be dismissed as a "shotgun" pleading because (1) it includes identical allegations against both Defendants, (2) each count incorporates allegations, and (3) each count is based on the same alleged activity. The Eleventh Circuit has described a shotgun pleading as one where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). As discussed more fully below, all of the Plaintiff's counts are based on a common factual scenario and each Defendant is purportedly liable under each count. Therefore, it is possible to determine which allegations of fact are intended to support which claims for relief, and dismissal on this ground is not warranted.

#### 2. Rule 9(b)

The Defendants next argue that Counts 2-11, which "sound in fraud," should be dismissed because the Plaintiff does not meet the pleading standards of Rule 9(b). The Defendants suggest their concern is "not merely academic; instead, the lack of particularity directly affects [their] ability to frame a responsive pleading." (Doc. 23-1 at

10 n.8).  However, the Defendants also object to the Plaintiff's reference to allegations in her Responses to Local Rule 33.3 RICO Interrogatories on the grounds that the allegations are not contained in a "pleading."[4]  (Doc. 28 at 4 n.3).

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  This particularity is required in order to "alert[ ] defendants to the precise misconduct with which they are charged and [to] protect[ ] defendants against spurious charges of immoral and fraudulent behavior."  *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) (citation and internal quotation marks omitted).  "The application of Rule 9(b), however, 'must not abrogate the concept of notice pleading.'"  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted).

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Id.* (citation and internal quotation marks omitted).

The Plaintiff alleges the Defendants made four misrepresentations.  First, the Defendants represented that BB&T Bank's Wealth Management/Trust Department was "dedicated to championing client interests" and specialized in developing an

---

[4] Local Rule 33.3 requires RICO Interrogatories "[f]or the purpose of aiding the court and the RICO defendants in ascertaining the validity and scope of RICO claims."  M.D. Ga. L.R. 33.3. Because the purpose of the Interrogatories is to expound upon the complaint, and because courts should "harmonize the directives of Rule 9(b) with the broader policy of notice pleading," the Court considers the allegations in the Interrogatories in determining whether the Plaintiff can survive the Defendants' motion to dismiss for failure to plead fraud with particularity. *Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985); *see also Jay Auto. Grp., Inc. v. Am. Suzuki Motor Corp.*, 2012 WL 425984, at *9 n.1 (M.D. Ga.).

"individualized, client-centric and conservative investment strategy tailored to the …
needs of that particular client." (Doc. 20 at ¶¶ 100, 114, 127, 140). Second, the
Defendants represented that they would perform the duties and provide the services
outlined in the Agreement, "although they had no intention or ability to act as promised."
(Docs. 20 at ¶¶ 77.A, 85.A, 99, 114, 127, 140, 154.A, 167; 21 at 7). Third, the
Defendants represented that they had "special expertise" in VPFCs and that their
investment strategy would allow the Plaintiff to reduce risk and protect her from losses.
(Docs. 20 at ¶¶ 90, 101, 115, 128, 141, 154.F, 161.B; 21 at 8-10). Finally, the
Defendants misrepresented the facts related to the November 2012 fee refund. (Docs.
20 at ¶¶ 77.O, 85.K, 104, 118, 132, 143, 154.G, 167; 21 at 10-12, 14).

Two of these alleged misrepresentations were made in documents the Plaintiff
attached to her complaint. As to the fraudulent misrepresentations in the Agreement,
the Plaintiff alleges the Defendants knew that they would not fulfill their promised duties,
which were "central to the fiduciary relationship" and the "basis of the bargain." (Docs.
20 at ¶ 34; 27 at 14). Thus, as a consequence of the fraud, the Defendants obtained
control over the Plaintiff's assets "for the purposes of generating fees and revenue."
(Doc. 21 at 11). As to the fraudulent misrepresentations in the Refund Letter, the
Plaintiff alleges the statement suggesting that the refund was "not required" but was
instead a "reflection of our corporate values" was incorrect and deliberately designed to
be misleading. (Doc. 20 at ¶¶ 54, 55). Through this statement, the Defendants were
able to "obscure the nature of their business practices," evade detection, and lull the
Plaintiff into inaction. (Docs. 20 at ¶ 55; 21 at 12). As to the misrepresentations in the
Agreement and Refund Letter, the Plaintiff has pleaded scienter "with particular facts

that give rise to a strong inference that the defendant acted in a severely reckless manner." *GCA Strategic Inv. Fund, Ltd. v. Joseph Charles & Assocs., Inc.*, 245 Ga. App. 460, 464, 537 S.E.2d 677, 682 (2000) (citation omitted).  Because these misrepresentations serve as a basis for Counts 2-11, the Defendants' motion to dismiss these counts for failure to plead fraud with particularity is denied.[5]

### 3. Rule 8(a)(2)

#### a. Breach of Contract (Count 1)

The Defendants argue the Plaintiff's breach of contract claim fails because she has not identified a particular contract term allegedly breached, it is barred by the statute of limitations, and the Plaintiff has failed to allege damages.  The Plaintiff has attached the Agreement to her complaint and clearly identified the terms the Defendants allegedly breached.  (Docs. 20 at ¶¶ 30-31; 20-1 at 2-3).  Moreover, it does not appear beyond a doubt that the Plaintiff can prove no set of facts that toll the statute of limitations.  *Lindley v. City of Birmingham, Ala.*, 515 F. App'x 813, 815 (11th Cir. 2013) (citation omitted).  Finally, the Plaintiff has sufficiently alleged that her assets and income have been "decimated" as a result of the Defendants' conduct.  As one example, she alleges she has had to borrow funds from BB&T Bank in order to pay insurance premiums for the Effie C.S. Bowers Irrevocable Insurance Trust.  (Doc. 20 at

---

[5] It appears the Defendants are on notice of the other misconduct the Plaintiff alleges.  Apart from previously defending themselves against similar allegations in a prior case involving "their very same wealth management advisors" who recommended an "identical strategy as part of the same fee driven … scheme," the Defendants seem to have specific knowledge about their representations to the Plaintiff regarding the VPFCs and associated strategy.  (Docs. 20 at ¶¶ 58-63; 27 at 6).  In their motion to dismiss, the Defendants allege the Plaintiff "was represented in these discussions by her own professional advisors, including a tax attorney and a certified public account."  (Doc. 23-1 at 4 n.3).  Clearly, if the Defendants are able to provide information about who was present at these discussions, they are on notice of "the precise misconduct with which they are charged."  *Wagner*, 464 F.3d at 1277 (citation omitted).

¶¶ 50, 57).  The loaned amount exceeds $1 million and continues to grow.  (Doc. 20 at

¶ 50).  Accordingly, the Plaintiff has sufficiently alleged a claim for breach of contract.

### b.  Breach of Contract Accompanied by Fraudulent Act (Count 3)

The Defendants argue this claim should be dismissed because it is not a

recognized claim in Georgia.  The Plaintiff responds that South Carolina law, which

does recognize such a claim, applies.[6]

Because this is a diversity case, Georgia's choice-of-law rules determine what

law governs.  *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932

(11th Cir. 2013).  In Georgia, a choice-of-law provision "allows the contracting parties to

choose the law of the state to govern their contractual rights and duties."  *Rayle Tech,*

*Inc. v. DeKalb Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998) (citation

omitted).  Here, the Agreement provides: "<u>Applicable Law</u>.  This Agreement will be

governed by the internal laws of the State of SC without reference to principles of

conflict of laws."  (Doc. 20-1 at 7).  Under South Carolina law, "the theory of breach of

contract accompanied by a fraudulent act is identified as an action in contract."  *Lister v.*

*NationsBank of Del., N.A.*, 329 S.C. 133, 141, 494 S.E.2d 449, 454 (S.C. Ct. App. 1997)

(citation omitted); *see also King v. Marriott Intern., Inc.*, 520 F. Supp. 2d 748, 752

(D.S.C. 2007).  Accordingly, pursuant to the choice-of-law provision in the Agreement,

---

[6] "In order to have a claim for breach of contract accompanied by a fraudulent act, the plaintiff must establish three elements: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach."  *Conner v. City of Forest Acres*, 348 S.C. 454, 465-66, 560 S.E.2d 606, 612 (S.C. 2002).

South Carolina law applies, at the very least, to the Plaintiff's contract claims.[7]  *See*

*Young v. W.S. Badcock Corp.*, 222 Ga. App. 218, 474 S.E.2d 87 (1996).  Thus,

dismissal of Count 3 is not warranted on the ground urged by the Defendants.

### c.  Georgia Uniform Securities Act (Count 4)

Both Defendants argue this claim is barred by the applicable two-year statute of

limitations and the Plaintiff has not adequately pleaded the fraud on which it is

predicated.  Defendant BB&T Bank, citing O.C.G.A. § 10-5-58(e)-(f), also argues the

claim cannot be brought against it because "it was not a person acting as an investment

adviser or investment adviser representative."  (Doc. 23-1 at 14).

The Plaintiff alleges the Defendants violated several provisions of the Georgia

Uniform Securities Act of 2008.  (Docs. 20 at ¶¶ 90-95; 21 at 13-14).  The Plaintiff

alleges both Defendants effected transactions in VPFCs for transaction-based

compensation without being registered as broker-dealers in violation of O.C.G.A. § 10-

5-30.  (Doc. 21 at 13).  Because the last transaction allegedly occurred in July 2014, the

Court cannot say as a matter of law that the claim in its entirety is barred by the statute

of limitations.  (Doc. 21 at 13).  Moreover, as discussed above, the Plaintiff has

sufficiently pleaded the alleged misrepresentations made in the Refund Letter, which

the Plaintiff alleges constituted a false and misleading statement in violation of O.C.G.A.

§ 10-5-54.  (Doc. 21 at 14).  Finally, it is not clear why this claim must be dismissed as

to BB&T Bank based on the provisions it cites.  The Plaintiff, assuming BB&T Bank's

argument is that it cannot be liable because it is not a registered investment advisor,

---

[7] The Defendants do not ask the Court to apply Georgia choice-of-law principles to classify the claim as a tort claim, notwithstanding its classification under South Carolina law as a contract claim.  *See Rayle Tech, Inc.*, 133 F.3d at 1410.

responds that this is the very basis for her claim: BB&T Bank acted in the capacity of an investment advisor *despite* its non-registered status.  BB&T Bank does not respond to the Plaintiff's argument, and the provision it relies upon makes it unlawful for a non-registered person to transact business as an investment adviser.  Therefore, this claim will not be dismissed on the grounds urged by the Defendants.

### d.  Constructive Fraud (Count 6)

The Defendants argue this claim must be dismissed because it is an equitable doctrine and cannot be used as a means to recover money damages.  *See Aliabadi v. McCar Dev. Corp.*, 249 Ga. App. 309, 313, 547 S.E.2d 607, 611 (2001); *Wall v. Century 21 Winnerville Realty, Inc.*, 244 Ga. App. 762, 765, 536 S.E.2d 798, 801 (2000).  The Plaintiff argues her prayer for relief includes "such other relief as is just, equitable and proper" and suggests this includes rescission.  (Doc. 20 at ¶ 125).  However, it is clear the Plaintiff has not sought rescission.  *See Ainsworth v. Perreault*, 254 Ga. App. 470, 471-72, 563 S.E.2d 135, 137 (2002); *Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 145-47, 524 S.E.2d 790, 795-96 (1999).  Because the Plaintiff does not seek equitable relief, this claim must be dismissed.

### e.  Fraudulent Misrepresentation (Count 5), Fraud in the Inducement (Count 7), Negligent Misrepresentation (Count 8)

The Defendants argue these counts fail to state a claim because the alleged misrepresentations do not support a cause of action for fraud, and the Plaintiff has failed to allege scienter and reliance.[8]

As to the fraudulent misrepresentations in the Agreement, which serve as a basis for the counts, the Defendants argue "[t]his representation is contractual in nature" and

---

[8] The parties do not address the doctrine of election of remedies.

"is not actionable to support a tort claim."  Under Georgia law, actionable fraud exists

"where a promise as to future events is made with a present intent not to perform or

where the promisor knows that the future event will not take place."  *Gibson Technical

Servs., Inc. v. JPay, Inc.*, 327 Ga. App. 82, 84, 755 S.E.2d 377, 379 (2014) (citation

omitted).  The Plaintiff alleges the Defendants, at the time they signed the Agreement,

knew they would not and could not fulfill their promised duties.  Instead, the Defendants

made these promises to induce her to transfer her assets so that they could then

recommend an investment product and strategy designed to generate substantial fees

and income for the Defendants, notwithstanding the risks to the Plaintiff.  According to

the Plaintiff, she would not have entrusted her assets to the Defendants absent their

misrepresentations.  Thus, the Plaintiff has sufficiently alleged reliance, scienter, and a

basis for her remaining fraud-based claims.  *See Johnson v. GAPVT Motors, Inc.*, 292

Ga. App. 79, 82, 663 S.E.2d 779, 783 (2008); *GLW Int'l Corp. v. Yao*, 243 Ga. App. 38,

41, 532 S.E.2d 151, 155 (2000) ("With regard to the element of scienter, '[t]he gist … of

an action for damages in tort based on the falsity of representations is that they must

have involved actual moral guilt.'" (citation omitted)).

### f.  Civil Conspiracy (Count 9)

The Defendants argue "civil conspiracy" is not a valid cause of action under

Georgia law.  The Plaintiff responds that the Defendants can be liable for conspiracy on

the theory that each Defendant agreed to act in concert with the other to commit the

underlying torts.

Under Georgia law,

A conspiracy is a combination of two or more persons to accomplish an
unlawful end or to accomplish a lawful end by unlawful means.  To recover

damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort.  Absent the underlying tort, there can be no liability for civil conspiracy.

*Miller v. Lomax*, 266 Ga. App. 93, 103, 596 S.E.2d 232, 242 (2004) (citation omitted).

However, "where a plaintiff seeks to impose civil liability for a conspiracy, the conspiracy in and of itself furnishes no independent cause of action." *Nalley v. Langdale*, 319 Ga. App. 354, 362 n.15, 734 S.E.2d 908, 915 n.15 (2012).  Rather, "the gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage." *Id.* (citation and internal quotations omitted).

Therefore, Count 9 does not state an independent cause of action and must be dismissed.  *See Nalley*, 319 Ga. App. at 362 n.15, 734 S.E.2d at 915 n.15.

### g.  Georgia Racketeer Influenced and Corrupt Organizations Act (Count 10)

The Defendants argue the Plaintiff's RICO count should be dismissed because she has failed to allege facts sufficient to support any of the elements of the alleged predicate acts.  The Georgia RICO statute makes it "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in … personal property of any nature, including money." O.C.G.A. § 16-14-4(a).  "A 'pattern of racketeering activity' means '[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions' that are interrelated." *Vernon v. Assurance Forensic Accounting, LLC.*, --- Ga. App. ---, --- S.E.2d ---, 2015 WL 3953266, at *11 (2015) (citing O.C.G.A. § 16-14-3(8)(A)).  Thus, "a plaintiff must show that the defendant committed predicate offenses (set forth in O.C.G.A. § 16-14-3(9)) at least twice." *Burgess v.*

*Religious Tech. Center, Inc.*, 600 F. App'x 657, 663 (11th Cir. 2015) (citation and internal quotation marks omitted).  "[L]ike any other fraud action, a RICO claim based on fraud must be pleaded with specificity."  *Id.* (citation omitted).

The Plaintiff alleges the Defendants engaged in theft by deception.  O.C.G.A. § 16-8-3.  "A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property."  O.C.G.A. § 16-8-3(a).  "A person deceives if he intentionally … (1) Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false; (2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed; [or] … (5) Promises performance of services which he does not intend to perform or knows will not be performed."  O.C.G.A. § 16-8-3(b)(1)-(2), (5).  The Plaintiff has sufficiently alleged that the Defendants committed a violation of O.C.G.A. § 16-8-3(b)(5) by promising to perform their respective duties in the Agreement although they had no intention of doing so, a violation of O.C.G.A. § 16-8-3(b)(2) by failing to correct the false impression that the Agreement would be performed, and violations of O.C.G.A. § 16-8-3(b)(1)-(2) through their alleged fraud in the Refund Letter and their failure to correct it.  As discussed above, the Plaintiff has also sufficiently alleged violations of the Georgia Uniform Securities Act of 2008.  Therefore, the Plaintiff has sufficiently alleged that the Defendants engaged in at least two predicate acts of racketeering activity, and dismissal is not warranted on the ground urged by the Defendants.

### h. Georgia Fair Business Practices Act (Count 11)

The Defendants argue this claim should be dismissed because it is time-barred and the Plaintiff failed to provide the requisite notice.  It is not "apparent from the face of the complaint" that the claim is time-barred.  *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citation and internal quotation marks omitted). However, under O.C.G.A. § 10-1-399(b), "[a]t least 30 days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be delivered to any prospective respondent."  When the Plaintiff filed this lawsuit on January 27, 2015, she did not include a claim under the Georgia Fair Business Practices Act ("GFBPA").  The required notice under O.C.G.A. § 10-1-399(b) was served upon the Defendants on February 19, 2015.  On April 23, 2015, more than 60 days later, the Plaintiff properly filed an amended complaint and included a claim under the GFBPA.

If the Plaintiff had included a claim under the GFBPA in her original complaint, she clearly would have failed to comply with O.C.G.A. § 10-1-399(b).  *See Gibbs v. Abbott Labs., Inc.*, 2001 WL 1558279, at *3-4 (N.D. Ill.) (applying Georgia law).  But she didn't; she first asserted that claim in her amended complaint.  Clearly, the Plaintiff provided the required notice before she asserted her GFBPA claim.  *See Jensen v. Engler*, 317 Ga. App. 879, 881-82, 733 S.E.2d 52, 54-55 (2012).  Accordingly, the Defendants' motion to dismiss Count 11 is denied.

### III.     Conclusion

For the foregoing reasons, the Defendants' motion to dismiss (Doc. 23) is

**GRANTED in part** and **DENIED in part**.  Counts 6 and 9 are dismissed without

prejudice.

**SO ORDERED,** this 8th day of July, 2015.

S/ Marc T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT